Milton Albert, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Coldbrook-Beechford and Ashokan Reservoir, S.H. No. 1186, Ulster County, Map No. 27, Parcel No. 41 and Map No. 39, Parcel No. 55.
The aforesaid Map No. 27 and description attached thereto were filed in the office of the County Clerk of Ulster County on January 25, 1966; and the aforesaid Map No. 39 and description attached thereto were filed in the office of the County Clerk of Ulster County on December 6, 1967.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on December 19, 1967, and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the maps and descriptions filed in the Ulster County Clerk’s office, copies of which are attached to the claim and same are incorporated herein by reference.
Claimant was the owner of the property by reason of a deed dated August 28, 1959 from Leonard Colange and Cornelia Colange, grantors, to Singer Denman Lumber Corp., grantee, recorded in the Ulster County Clerk’s office on September 2, 1959 in Liber 1074 of Deeds, at Page 107.
Before the appropriation, the property consisted of 1.299± acres, located on the westerly side of Route 28 in the Hamlet of Boiceville, in the Town of Olive, in Ulster County. It was a rectangular shaped parcel with 198.45± feet of frontage on *6 Route 28, level and at grade. On the south, the parcel was 278± feet in depth; and on the north, 292± feet in depth. At the northerly side was a 20± foot road or right of way extending from the highway, across claimant’s property, providing access to a howling alley property to the rear of (but not part Of) claimant’s land. The road or right of way went parallel to the northerly boundary line.
Claimant’is property was improved with a one-story concrete block building with a brick veneer on the front and sides, approximately 130± feet in width and 28± feet deep, situated with its width facing the highway. The northern portion of the building was occupied by the United States Post Office Department for use as a post office; and the balance of the building was used by claimant in the furtherance of its retail hardware, toy, sporting goods, and lumber business activities. To the rear of the building, but attached to it, was a storage shed for building materials stocked by claimant in its business; and behind the building and toward the rear of the property was a lumber storage shed structure. Also in the rear and behind the southern end of the building was a concrete drive that was electrically heated for the purpose of melting snow as it fell thereon. In the front area were two signs, one of which was illuminated.
The building had a septic tank system and access to water from a well. A gravelled parking area was located between the building and the highway, and a gravelled road extended over the previously described road or right of way to the rear yard of claimant’s property and to the above-mentioned bowling alley property.
The court viewed the property after the improvement was completed.
The highest and best use of claimant’s property both before the appropriation and after the appropriation, was commercial use.
The subject proceedings appropriated a total of approximately 0.205± acres of claimant’s property. Parcel No. 41 appropriated 0.144± acres and Parcel No. 55, 0.061 ± acres. The parcels, combined, formed a strip across the entire frontage of claimant’s land. Parcel No. 41 was rectangular in shape with the exception of the northeast corner of the parcel which was rounded in shape. The frontage or east boundary was 129± feet in length. On the south the depth was 37± feet and on the north, 59± feet.
Parcel No. 55 abutted Parcel No. 41 to the north and was almost square in shape. Its southeast corner dovetailed with *7 the rounded corner of Parcel No. 41 so that the two parcels made one contiguous strip of frontage. The frontage of Parcel No. 55 was 71± feet. On the north it was 54± feet deep and on the south, 59± feet.
Located within the appropriated area were the following: (1) a portion of the gravelled parking area located in front of the building and along the highway frontage, (2) a portion of the surfaced road or right of way, and (3) the two signs.
The claimant’s appraiser valued the property before the appropriation at $69,000 with the land being valued at $7,000 per acre. (The court interprets this as $9,000 for land and $60,000 for buildings and improvements.) This valuation was based on market data approach, supported by cost and income approaches. Claimant’s appraiser’s after value was $38,500 based on a market approach supported by cost and income approaches. This produced a total damage of $30,500 which was allocated as follows:—
Direct damage $2,250 allocated as follows:—
.205± acres of land taken at
$7,000 per acre............................$ 1,435.
Gravelled surfacing — parking area.......... 200.
Advertising sign........................... 200.
Advertising sign (illuminated).............. 400.
$ 2,235.
Bounded..................................$ 2,250.
Consequential damage .....................$ 28,250.
Total damage .............................$ 30,500.
The State’s appraiser’s before value was $44,000, of which he assigned $7,800 to land at $6,000 per acre. The balance, $36,200, was assigned to buildings and improvements. This was based on a market approach, supported by cost and income approaches. His after value was $33,000 of which he assigned $6,550 to land and $26,450 to buildings and improvements. His after value was based on a market approach, supported by cost and income approaches. This produced a total damage of $11,000 which was allocated as follows:—
Direct damage $1,700 allocated as follows:
,205± acres of land taken at
$6,000 per acre...........................$ 1,250.
Gravelled surfacing — parking area.......... 450.
Cost to cure loss of front parking area....... 9,300.
Total damage ............................. $ 11,000.
*8 After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, the demeanor of the witnesses, and the court’s view of the subject property, the court finds as follows:—
1. The court adopts the State’s appraiser’s valuation of the land at $6,000 per acre — ■ $-1,250 — ■ and his valuation of the gravelled surfacing of the parking area — $450 —as the fair market values thereof for a total of $1,700. The court adopts the claimant’s apprasier’s valuations of the two signs taken at $200 and $400, respectively, as the fair market value thereof and notes with respect to the latter that there was testimony on behalf of the claimant that claimant received a rental of $120 per year for this sign which advertised the bowling alley business located on property to the rear of claimant’s property.
With respect to the two direct takings which were on different dates, the court breaks up its $1,250 total award for land to $875 rounded for Parcel No. 41 and $375 rounded for Parcel No. 55.
The court totals all the above direct damages as $2,300.
2. The principal problem here relates to the effects of the State’s taking on the remainder of the claimant’s property. This brings into highlight the claimant’s appraiser’s consequential damage approach as against the State’s appraiser’s cost to cure approach. This relates to the loss of parking area in front of the building and the nearness of the State’s new right of way line to the front of claimant’s building, with the after situation being dramatized in claimant’s exhibits in evidence 7 and 9 and claimant’s appraisal, page 28. The new right of way line is now 16 feet from the front wall of the building (the distance to old right of way line was 53 feet on the south and 75 feet on the north). Since there is a raised sidewalk at the very front of the building 7 feet wide on the south and 5 feet wide on the north, the driveway area in front of the property within the claimant’s property line ranges from 9 feet wide on the south to 11 feet wide on the north. This is about enough for parallel parking adjacent to the sidewalk. The after situation in this respect, with traffic control areas installed by the State, is visualized by claimant’s exhibits in evidence 7 and 9 and page 28 of claimant’s appraisal.
There was testimony concerning the renewal of the Post Office lease at a higher rental and concerning the claimant’s gross income from the store operation for fiscal years 1965-1966, 1966-1967, 1967-1968 and 1968-1969. This was exclusive of *9 lumber sales and orders at the store. The figures rounded were as follows:—
April 1, 1965 — February 28, 1966
(11 months).............................. .$ 20,500.
March 1,1966 — February 28,1967........... 30,600.
March 1,1967 — February 28,1968........... 31,400.
March 1,1968 — February 28, 1969........... 26,700.
The construction work was done during the 1967-1968 fiscal year.
The above figures indicate a $4,000-$5,000 dropoff in gross income exclusive of lumber sales from the store.
It is noted that the Post Office lease requires parking space and that the Post Office is still there subject to a clause permitting the United States Government to terminate the lease on 30 days ’ notice.
The court has given careful consideration to both appraisers ’ views concerning the adverse effect of the State’s taking and makes the following findings:—
a. The before fair market value of the building and improvements was $46,000. This the court reaches by upward adjustments from the State’s appraisal based on better construction features in the building and improvements than the State’s appraiser considered in his appraisal.
b. The court notes that the claimant’s appraiser’s consequential damage to the building and improvements was $28,250 and the court now considers the question of whether an appropriate cost to cure approach would be less costly to the State — because if it would be, the court is required to use it.
The State’s appraiser’s cost to cure was $9,300. The items included were detailed on page 24 of such appraisal (although the total stated there is $300 too high). His approach was to provide substitute parking in the rear of the building by surfacing an area there, providing adequate rear entrance facilities to the hardware store and even bricking the rear wall to provide an attractive rear aspect to the property. The court finds that clientele of the store could be educated to — and would — use such an improved and attractive rear parking area. Some of them apparently go there now for heavy articles sold from the shed attached to the rear of the building. However, the court finds that it must add to the State’s appraiser’s figures for the following purposes:—
a. Barriers or fencing to keep cars off the backyard surface above the septic tank, away from the fuel oil tank, and away from the ramp that goes down to the cellar. Such barriers or fencing would have to be lighted.
*10 b. The shed attached to the rear of the building would have to be reconstructed or relocated in order to carry out the State’s appraiser’s plan. The court refers to claimant’s appraiser’s depreciated cost estimate for this shed of $1,700.
The court finds that an additional $2,200 should be added to the State’s appraiser’s cost to cure for the above two items.
The above is for the substitute parking in the rear but does not cover other effects of the State’s new right of way line being only 16 feet from the front wall of the building, whereas before the taking the State’s old right of way line, measured from the front of the building was 53 feet on the south and 75 feet on the north.
The court has considered this circumstance and also the separate cost to cure problem discussed above and finds that the after value of the building and improvements is $29,500 and that, accordingly, there was a damage of $16,500 to the building and improvements of which the court’s cost to cure item of $11,500 is a part. This means that the remainder of the difference between the before and after values — $5,000 — is attributable to the proximity of the State’s new right of way line to the front of the building.
Since the above-described approach produces a damage of $16,500 as against the claimant’s appraiser’s consequential damage figure of $28,250, the court adopts the former.
3. The court totals its award as follows:—
Land and signs directly taken...............$ 2,300.
Cost to cure — substitute parking
$9,300 + $2,200.......................... 11,500.
Consequential damage to building because of proximity to State’s new right of way line.. 5,000.
$ 18,800.
In view of this, decision and the court’s disposition of this claim, the State’s motions made at the end of the claimant’s case and at the close of the trial are now denied.
The claimant is awarded for the appropriation of Parcel No. 41 the sum of $18,425 for all damages, direct and consequential, with interest thereon from January 25, 1966 to July 25, 1.966 and from December 19, 1967 to the date of entry of judgment herein; and the claimant- is awarded for the appropriation of Parcel No. 55 the sum of $375 for all damages, with interest thereon from December 6,1967 to the date of entry of judgment herein.